USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BAYSIR SUMMERS,

                     Plaintiff,

-against-

EDWARD BURNETT, NICHOLAS CICALA, MARIANNA CORDOVANO, CHRISTOPHER PERRY, SANTOS DELEON, AND WOLF,

                     Defendants.

23-cv-10784 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    *Pro se* Plaintiff Baysir Summers ("Plaintiff") initiated this action on December 11, 2023, alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983"), claiming violations of the Eighth Amendment and Fourteenth Amendment, as well as bringing forth a negligence claim against Superintendent Edward Burnett ("Supt. Burnett" or "Burnett"), Sergeant Nicholas Cicala ("Cicala"), Correctional Officer Marianna Cordovano ("Cordovano"), Correctional Officer Christopher Perry ("Perry"), Sergeant Santos Deleon ("Deleon"), and Wolf (a medical examiner) (collectively, "Defendants"). (ECF No. 1, "Compl.")

    Presently before the Court is Defendants' Motion to Dismiss *pro se* Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF No. 28 & 29.) For the following reasons, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

    Plaintiff, while incarcerated within the Fishkill Correctional Facility ("Fishkill"), was approached by two unidentified prisoners demanding that Plaintiff pay them $500 if he wished to

1

stay in the housing unit B-West. (Compl. ¶ 1.) Plaintiff states that B-West was "known throughout the facility for being a Gang run dormitory." (*Id*. ¶ 2.) Plaintiff approached Cordovano and advised him "the[re] was a t[h]reat to [his] safety." (*Id*. ¶ 5.) Deleon was also informed of the threat. (*Id*. ¶ 6.) Later on, Plaintiff also told Perry and a female corrections officer ("Jane Doe #1") of his concern for the perceived threat to his safety. (*Id*. ¶ 8.) On a separate occasion, Plaintiff further informed Cicala that gang members were attempting to extort him in the amount of $500 and that there was a threat to his safety. (*Id*. ¶ 15.) Beyond stating that gang members were demanding $500 from Plaintiff and stating generally there was a threat to his safety, Plaintiff does not offer any allegations as to the specifics of the threats made by the gang members, who the gang members were, and whether there was a culture and history of violence and threats to prisoners' safety at Fishkill. (*See generally Id*.)

After speaking with Cicala, Plaintiff "was suddenly jumped by . . . about 5 prisoners from the housing unit and was severely injured." (*Id*. ¶ 20.) Plaintiff states that he cried out in pain, at which point "the officer c[a]me out of his office and pulled his pin," which made the assailants immediately leave. (*Id*. ¶ 22.) Plaintiff was then escorted to the medical unit by the security team. (*Id*. ¶ 26.)

Based on the foregoing, Plaintiff brings Section 1983 claims alleging violations of the Eighth Amendment and Fourteenth Amendment, as well as a state law claim of negligence against Defendants.

## PROCEDURAL HISTORY

On December 11, 2023, Plaintiff commenced this action against Defendants in his Complaint. (ECF No. 1). On August 30, 2024, Defendants filed their motion to dismiss and memorandum of law in support. (ECF Nos. 28 and 29.) Plaintiff did not file an opposition, and therefore Defendants did not file a reply in further support of their motion.

**LEGAL STANDARD**

A. **Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." (*Id.* at 679.) While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." (*Id.* at 678) (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B. **Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself

3

a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

C. *Pro Se* **Pleading Standard**

Where a litigant is *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider "new claims appearing for the first time in the briefing 'if the claims could have been asserted based on the facts alleged in the complaint." *McFadden v. Keyser*, No. 23-CV-802 (NSR), 2025 WL 846371, at *3 (S.D.N.Y. Mar. 18, 2025) (citing *Vlad-Berindan v. MTA New York City Transit*, No. 14-cv-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014). Courts are to read a *pro se* litigant's papers "liberally" and "interpret them to raise the strongest argument that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994).

**DISCUSSION**

Plaintiff brings claims pursuant to Section 1983, alleging violations of the Eighth Amendment and Fourteenth Amendment, as well as a state law claim of negligence. The Court addresses them in turn.

**A. Eighth Amendment Deliberate Indifference to Medical Needs Claim**

For a Plaintiff to state an Eighth Amendment deliberate indifference claim, an objective and subjective analysis must be satisfied. *McFadden,* 2025 WL 846371 at *4. In the case of showing deliberate indifference to medical needs, the objective analysis requires that the Plaintiff show a sufficiently serious deprivation was caused. In order to demonstrate a great deal of severity of medical burden, the condition being suffered from must be, "one that may result in death, degeneration, or chronic and substantial pain". *Green v. Senkowski*, 100 F. App'x 45, 46 (2d Cir. 2004). The subjective analysis to show deliberate indifference to medical need requires a Plaintiff to show that a Defendant acted with a culpable mindset, in which they intentionally deny care and/or disregard known threat(s) to Plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Plaintiff claims that while being treated by Defendant 'Wolf', a medical personnel at Fishkill Correctional Facility, the Defendant failed to sufficiently document the extent of Plaintiff's injuries, and "provide[d] the minimal care possible for the injuries sustained, especially for head trauma, being 'Deliberately Indifferent' to [P]laintiff health, safety and medical care". (Compl. ¶ 29.) Plaintiff suggests that he requested both X-ray and MRI imaging, and these requests were denied along with "proper medication". (*Id*. ¶ 30.) The Plaintiff also states that he has continued to, "request sick call and medical attention that goes unanswered and ignored, causing severe pain and suffering, and worsening of conditions have occurred, with severe pain in plaintiff's head, neck, back, ribs, etc." (*Id*. ¶ 41.) On account of these claims, Plaintiff alleges that his medical

5

conditions resulting from his sustained injuries have remained ongoing and have affected both his physical and mental health.

  In this instance, the Plaintiff's deliberate indifference claim fails to satisfy both the objective and subjective analysis that are required to assert an Eighth Amendment deliberate indifference claim. As for the objective analysis, Plaintiff fails to suggest that the medical burden and deprivation he experienced was serious enough to meet the required standard. The Plaintiff alleges that his sustained injuries consisted of his, "neck, back, ribs, facial bruises, busted lip, bloody nose, blacken eye, and [Plaintiff] was hit in the head with a blunt object that caused a severe laceration on the top of my head, leaving a permanent scar." (*Id*. ¶ 24.) Plaintiff also claims that he continues to suffer from migraines and severe neck, back, and rib pain which cause him trouble sleeping, along with depression and anxiety after the incident. (*Id*. ¶ 25.) While Plaintiff did sustain injuries, his assertions lack specificity. He does not sufficiently allege that his conditions, "contemplate a 'condition of urgency' that may result in 'degeneration' or 'extreme pain'". *Chance v. Armstrong*, 143 F. 3d 698, 702 (2d Cir. 1998). The Plaintiff's deliberate indifference claim also fails subjective analysis, as Plaintiff does not offer substantive allegations that indicate Defendant 'Wolf' was acting with a culpable mindset. Plaintiff was treated by 'Wolf' who administered pain relievers for his injuries and filled out a record in accordance with the Plaintiff's visit to the health facility. Disagreement with a medical treatment provided is not grounds for an Eighth Amendment deliberate indifference claim, nor does it permit a subjective analysis that shows that a Defendant is acting with a culpable mindset. Therefore, because Plaintiff is unable to satisfy the objective or subjective component of an Eighth Amendment deliberate indifference to medical needs claim, the motion to dismiss must be granted without prejudice.

## B. Eighth Amendment Failure to Protect Inmate Claim

In order to make an Eighth Amendment failure to protect claim as an inmate, a Plaintiff must be able to satisfy both an objective and subjective analysis which must conclude that a prison official showed and acted with deliberate indifference to an inmate's safety. *McFadden,* 2025 WL 846371 at *4.

The objective analysis requires that the prison official in question was made fully aware of a substantial risk to an inmate's safety and knew that the inmate was facing a serious risk of harm. (*Id*.) The subjective analysis requires that after knowing of the objective risk to the inmate's safety, the prison official showed deliberate indifference to that risk by consciously disregarding it. (*Id*.) Therefore, in order to be successful, failure to protect claims must show simultaneously that a Plaintiff properly and clearly informed a Defendant of an excessive and unreasonable risk to their safety, and that after learning of said risk, the Defendant acted in a way that was deliberately indifferent to the Plaintiff's concerns, which resulted in undue harm.

Plaintiff claims that upon being approached by gang members in his housing unit, B-West at Fishkill, Plaintiff feared for his safety and sought protection from the correctional officer on duty at the time, Defendant Cordovano, requesting that she allow Plaintiff to see the sergeant. (Compl. ¶ 5.) After Defendant Cordovano allegedly informed Defendant Deleon, the sergeant on duty, of Plaintiff's concerns, Defendant Deleon informed the Plaintiff that his shift was over, and that Plaintiff would have to seek assistance from the next tour sergeant. (*Id*. ¶ 6.) Afterward, Plaintiff alleges that he was again approached by the gang members, who were, "clearly… agitated and wanted to see results". (*Id*. ¶ 7.) The Plaintiff next claims that he went to the correctional office himself, where Defendant Perry and Defendant Jane Doe #1 were working, and "fully explained to them [Defendants] both of the imminent danger I [Plaintiff] was in". (*Id*. ¶ 8.) Plaintiff claims that in response to his concerns, Defendants Perry and Jane Doe #1, "falsely informed [the

7

Plaintiff] that there wasn't any sergeant on site". (*Id*. ¶ 10.) Plaintiff then alleges pleading with Defendant Perry to help him, and in response Defendant Perry told him to, "Go back to your [Plaintiff] cubicle before you really are in danger." (*Id*. ¶ 12.) When Plaintiff began to walk out of the office, he then claims that he ran into Defendant Cicala, who was the tour sergeant on duty, and "'Fully informed him of everything going on', and the fact that I [Plaintiff] was attempting to be extorted by gang members". (*Id*. ¶ 15.) Defendant Cicala allegedly told Plaintiff that he was unable to address the threat and took Plaintiff back in front of the housing unit where the gang members had been threatening Plaintiff. (*Id*. ¶ 16.) After Plaintiff once more pleaded with Defendant Cicala to protect him from being "assaulted by these prisoners", Defendant Cicala reiterated that he could not help him, and left him in front of the housing unit, where Plaintiff was "jumped and assaulted for on or about two minutes, by multiple prisoners". (*Id*. ¶¶ 18-21.) After the assault, Defendant Perry found the Plaintiff, then allegedly walked over to him and asked, "So what happen you fell?", before other security team members escorted Plaintiff to the medical unit. (*Id*. ¶¶ 23-26.) (internal quotations omitted).

      a. **Whether Plaintiff Made Defendants Fully Aware of the Risk to His Safety.**

Plaintiff does, at times, use conclusory language in his Complaint, such as stating that, "[Plaintiff] fully explained to them both [Defendants Perry and Jane Doe #1] of the imminent danger [he] was in", "both officers [Defendants Perry and Jane Doe #1] were on notice and made fully aware of a threat to [his] health and safety", and, "[Plaintiff] immediately rushed to him [Defendant Cicala] and 'fully informed [Defendant Cicala] of everything going on'". (Compl. ¶¶ 8-9, 15). In order to state a §1983 claim, a Plaintiff must present specific allegations of misconduct and identify specific individuals who have committed said misconduct, lest the allegations be deficient for engaging in conclusory language and improper group pleading. *Zielinski v. Martuscello,* No. 24-CV-150 (NSR), 2025 WL 1160357 at *2 (S.D.N.Y. Apr. 21, 2025).

8

  These kinds of conclusory statements are not, however, wholly representative of the content alleged in Plaintiff's Complaint against Defendants Perry, Jane Doe #1, and Cicala in particular. As per the United States Supreme Court, it is the duty of correctional officers, "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976 (1994)(quoting *Cortes-Quiones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). It is not the case that "[b]eing violently assaulted in prison" is a punishment that is constitutional for those who are convicted of crimes, which is why the failure of a correctional officer to protect an inmate from impending danger constitutes an Eighth Amendment violation. (*Id.*)

  Plaintiff avers that on the day that the assault took place, May 26, 2023, he informed Defendant Cicala, "that I [Plaintiff] was attempting to be extorted by the gang members, and that there was a threat to my [Plaintiff] health and safety." (Compl. ¶ 15.) Plaintiff also asserts in his Complaint that both Defendant Jane Doe #1 and Defendant Perry were informed that the Plaintiff was facing "imminent danger", and that there was "a threat to my [Plaintiff] health and safety". (*Id.* ¶¶ 8-9.) The concerns for his safety that Plaintiff alleges outlining to Defendants Perry, Jane Doe #1, and Cicala are clear and specific; they describe that there is imminent danger, that Plaintiff's safety and health is at risk, and that the individuals who are threatening Plaintiff are gang affiliated. While Plaintiff could not provide the specific names of his attackers, that does not take away from Plaintiff's allegations that he informed multiple officers on multiple occasions that he feared for his safety, as he was being extorted by gang members. The fact that Plaintiff did not know the exact names or identities of his future assailants—other than noting that they were wearing the color red— does not make the threat of assault any less serious nor imminent. (*Id.* ¶ 2.)

9

Defendants assert in their motion that the claims brought forth by the Plaintiff mirror those in the case of *Haughton v. Clinton*, in which "Haughton offers only the conclusory allegation that he 'feared for [his] safety,' without alleging that an attack was imminent or expected from a particular inmate." *Haughton v. Clinton,* No. 15-CV-1160 (JPO), 2015 WL 9244398 at *2 (S.D.N.Y. Dec. 17, 2015). This case is markedly different from *Haughton*, though, as Plaintiff alleges that he both specified that the attack he would experience was "imminent", and that his attackers were "gang members" who were wearing red, even if he was unable to identify them by name. (Compl. ¶¶ 2, 8, 15.) Other case law additionally points to threats of impending attack warranting a response from correctional officers. For example, in the case of *Gordon v. Drummond*, the Court stated, "If a correctional officer knows that a specific person or group intends to assault a… inmate, the officer must take reasonable steps in response to the substantial risk posed." *Gordon v. Drummond,* No. 19CIV8405GBDGWG, 2021 WL 5314604, at *9 (S.D.N.Y. Nov. 16, 2021), *report and recommendation adopted,* No. 19CIV8405GBDGWG, 2022 WL 884971 (S.D.N.Y. Mar. 25, 2022). In this case, the inverse is true. Defendants were allegedly aware of a substantial risk to an inmate's safety, knew the identity of the inmate who would be attacked, but did not know the identities of the attackers other than the fact that they were supposedly gang members who were housed in B-West. When there is a substantial risk of safety being posed to an inmate, there is an expectation that correctional officers will respond even if the response does not ultimately prevent the attack. *See Farmer,* 511 U.S. at 841-42, 847.

Furthermore, Plaintiff's assault would not constitute a "surprise attack". Case law corroborates this. Even if the attack had happened months in the future following the initial threat, correctional officers still have a responsibility to protect an inmate from said attack if given appropriate and specific notice of the threat. *Lewis v. Siwicki*, 944 F.3d 427, 433 (2d Cir. 2019) (reversing a grant of summary judgment for defendants where correctional officers' failure to act

10

on a four-month-old threat was deemed unreasonable after Plaintiff was attacked by gang members). In this case, Plaintiff knew he would be attacked imminently and by whom, regardless of whether he knew their specific names. Moreover, even if Defendants were unaware that gang activity was supposedly prevalent within B-West, Plaintiff still allegedly relayed to the Defendants that his attackers were gang-affiliated. (Compl. ¶ 2.)

      b. **Whether Defendants were Acting with a Culpable State of Mind**

As aforementioned, in order to successfully fulfill the subjective prong to make an Eighth Amendment failure to protect claim, a Plaintiff must allege that a prison official deliberately disregarded an objective threat to a prisoner's safety after learning that one exists. Here, Defendants Perry, Jane Doe #1, and Cicala satisfy the requirements for this subjective analysis. Defendant Perry and Jane Doe #1 were both allegedly informed of the specific threat to Plaintiff's safety, yet did not take reasonable action to prevent the attack. Once Defendants Perry and Jane Doe #1 both supposedly heard from Plaintiff that he was in danger of being assaulted, both Defendants were required to take some action to ensure the safety of Plaintiff, such as contacting a superior who could separate Plaintiff from the assailants. In this case, Plaintiff's concerns were not addressed because Plaintiff was allegedly told that there was no sergeant on site and to "go back to your [Plaintiff's] cubical". (Compl. ¶¶ 10, 12.) Allegedly aware that Plaintiff faced a substantial risk and has been informed of a specific and imminent attack, Defendants Perry and Jane Doe #1 were in a position to intervene or mitigate that risk but, according to Plaintiff, failed to do so.

Defendant Cicala, similarly, was also allegedly informed of the specific threat to Plaintiff's safety. Plaintiff claims that he explained to Defendant Cicala the circumstances of which his attack would occur—that he was being extorted by gang members and facing a threat to his health and safety— and did not receive a reaction from Defendant Cicala that would constitute a reasonable

11

response to this threat. (*Id*. ¶ 15.) Furthermore—according to Plaintiff—rather than addressing the risk to Plaintiff's safety, Defendant Cicala asked Plaintiff to follow him back to the housing unit, where the assailants were residing, and where Plaintiff claimed that the danger he was facing was imminent. (*Id*. ¶ 17.) After purportedly being informed that an attack on Plaintiff was impending, Defendant Cicala was in a position to intervene or mitigate the threats to Plaintiff's safety but, according to Plaintiff, did not do so. (*Id*. ¶ 18.)

As aforementioned, Plaintiff has sufficiently pled a failure to protect claim against Defendant Perry, Defendant Jane Doe #1, and Defendant Cicala, and the Court declines to dismiss Plaintiff's Eighth Amendment failure to protect claims against these Defendants.

Conversely, the Eighth Amendment failure to protect claims against Defendant Burnett, are a matter of supervisory liability, which Plaintiff improperly relies on, and do not meet the requirements for Plaintiff to bring forth a §1983 claim against him. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."). Defendants Deleon and Cordovano, while meeting the criteria for the objective analysis required to make a failure to protect claim, do not satisfy the subjective prong. Defendant Cordovano, after being informed of the threat to Plaintiff's safety, reported the threat to the sergeant on duty, Defendant Deleon. (Compl. ¶ 6.) As alleged, Defendant Cordovano took reasonable action to ensure Plaintiff's safety, even if the harm was not ultimately averted. *See Farmer,* 511 U.S. at 832. Defendant Deleon, similarly, was informed by Defendant Cordovano of the threat to Plaintiff's safety, and informed Plaintiff that since his tour as sergeant was over, and Plaintiff would instead have to go to the next tour sergeant with his concerns. (Compl. ¶ 6.) Defendant Deleon's conduct, as alleged, was also a reasonable response to the perceived risk Plaintiff was facing, even if Plaintiff did not ultimately avoid the assault. *See Farmer,* 511 U.S. at 832.

12

For these reasons the following Defendants are dismissed from all Eighth Amendment failure to protect claims without prejudice: Defendant Burnett, Defendant Deleon, and Defendant Cordovano.

### C. Fourteenth Amendment Equal Protection Claim

In order to plausibly allege a Fourteenth Amendment equal protection claim, a plaintiff must first show that "he was treated differently than others similarly situated as a result of intentional or purposeful discrimination and that such treatment "was not reasonably related to any legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Here, Plaintiff offers no allegations whatsoever that he was treated disparately. (*See* Compl.) Without any such factual averments, the Court cannot discern a viable Fourteenth Amendment equal protection claim, and, consequently, the Court dismisses Plaintiff's Fourteenth Amendment equal protection claim without prejudice.

### D. Negligence Claim

Plaintiff seeks to assert a negligence claim against Defendants; however, per New York Correction Law § 24, "Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 252 (W.D.N.Y. 2007).

Plaintiff's negligence claim stems from activities arising out of "DOCS employee[s'] act performed within the scope of [their] employment, [such claim] may be maintained only in the New York Court of Claims as a claim against the State of New York." (*Id.*) Therefore, the Court dismisses with prejudice Plaintiff's negligence claim.

### E. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

13

rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to determine whether or not qualified immunity applies, the court considers: "(1) whether the plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established at time of defendant's alleged misconduct; (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-34 (2d Cir. 2010)).

In this instance, the Court must decide whether Defendants are able to rely on a qualified immunity defense against Plaintiff's Eighth Amendment failure to protect claims against them. As already acknowledged, Plaintiff has sufficiently pled an Eighth Amendment failure to protect claim against Defendants Perry, Jane Doe #1, and Cicala, satisfying the first prong of the qualified immunity analysis.

For the second consideration, at the time of the Defendants' failure to protect Plaintiff, Plaintiff had a clearly established constitutional right under the Eighth Amendment to be protected from substantial risks of violence stemming from the conditions of their confinement. *See Farmer*, 511 U.S. at 847. Given there was ample precedent at the time of Defendants' conduct, the Court must conclude that Plaintiff's Eighth Amendment rights were clearly established at the time Defendants allegedly committed the referenced constitutional rights violations.

At the time of the assault, any correctional officer would have reasonably known that allowing a prisoner to be attacked, when they were informed that a specific attack was imminent, would be unlawful. A prison environment that allows violence to go unpunished constitutes as a "condition of confinement that objectively poses an unreasonable risk of serious harm to [the prisoner's] current or future health" and would additionally constitute as an environment which

shows deliberate indifference to inmate safety. *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020). This is further supported by case law, which holds that an Eighth Amendment failure to protect against inmate violence under similar circumstances constitutes an exception to qualified immunity. *Lefler v. Ferraro,* No. 22-CV-6468-FPG, 2025 WL 489331 (W.D.N.Y. Feb. 13, 2025) (finding that defendants were not eligible for qualified immunity after being warned about an impending assault on an inmate and allegedly failing to protect him). Therefore, the Court finds that Defendants Perry, Jane Doe #1, and Cicala in their individual capacities are not entitled to a qualified immunity defense against Plaintiff's Eighth Amendment claims.

F. **Eleventh Amendment Official Capacity**

The Eleventh Amendment provides that states have immunity from litigation in federal court by citizens of other states or foreign entities. This immunity extends to state actors when damages against a state official are sought in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office."). Therefore, state governments cannot be sued in federal court; to revoke Eleventh Amendment immunity for a state actor, the state must waive its own Eleventh Amendment immunity. *Jenkins v. Officer S (Downstate),* No. 19-CV-10728 (KMK), 2021 WL 4392611 (S.D.N.Y. Sept. 24, 2021).

Accordingly, since there has been no waiver of state immunity in this case, the individuals involved cannot be sued for monetary damages in their official capacities. In addition, under § 1983, a plaintiff may not seek monetary relief from officials in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304. Since seeking monetary damages from state officials in their official capacities is barred under the Eleventh Amendment, Plaintiff's claims against Defendants in their official capacities are dismissed with prejudice.

G. **Valentin Order**

By Order dated January 19, 2024, the Court directed the New York State Attorney General's Office ("NYSAG"), as counsel for and agent of the New York State Department of Corrections and Community Supervision ("NYS DOCCS"), to ascertain the identity and badge number of each John Doe whom Plaintiff seeks to sue. (ECF No. 6.) In response, the NYSAG identified Chris Churns as "John Doe #1," and either Mario Malvarosa, the Facility Health Services Director ("FHSD"), and/or Latasha Jackson-Smith, the Deputy Superintendent of Health Services ("DSHS"), as "John Doe #2," the individual responsible for overseeing the medical unit. (ECF No. 9.) The NYSAG, however, was unable to identify "Jane Doe #1," reporting that "no woman-identified officer was on duty in B-West on May 26, 2023," the location of the alleged incident. If Plaintiff wishes to pursue a claim against "Jane Doe #1," he must provide additional information to the NYSAG no later than November 17, 2025, to enable a further attempt at identification. Accordingly, should Plaintiff file an amended pleading consistent with this Order, he must substitute John Doe #1 and John Doe #2 with their proper names.

Lastly, NYSAG identified "Wolf" as Janice Wolf-Friedman in a letter dated March 29, 2025. (ECF No. 19.) However, Defendant Wolf has not yet been properly named in this action. Plaintiff is therefore directed to file an amended pleading properly naming Janice Wolf-Friedman as a defendant. Upon the filing of such an amended pleading, Defendant Wolf must be re-served. The Court will issue a separate service order directing the U.S. Marshals to re-serve Defendant Wolf once the amended pleading is filed.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion. That portion of the motion seeking to dismiss Plaintiff's claims is GRANTED with prejudice to the extent the each of the named Defendants are sued in their official capacity.

Plaintiff's Eight Amendment claim for deliberate indifference to medical needs as against defendant Wolf is GRANTED without prejudice.[1]  Plaintiff's Eight Amendment claim for failure to protect is GRANTED without prejudice as against Defendants Supt. Burnett, Deleon and Cordovano and DENIED as against Defendants Perry, Jane Doe #1, and Cicala. Plaintiff's Fourteenth Amendment equal protection claim is GRANTED without prejudice. Thus, the only remaining claims are Plaintiff's Eighth Amendment failure to protect claims against Defendants Perry, Jane Doe #1 and Cicala.

*Pro se* Plaintiff is granted leave to file an Amended Complaint. *Pro se* Plaintiff will have until November 17, 2025, to do so, consistent with this order. *Pro se* Plaintiff is advised that the Amended Complaint will replace, not supplement, the original Complaint, and so any claims he wishes to pursue must be included in, or attached to, the Amended Complaint. If *pro se* Plaintiff files an Amended Complaint, Defendants are directed to answer or otherwise respond to the Amended Complaint by December 8, 2025.

If *pro se* Plaintiff fails to file an Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice. Additionally, if *pro se* Plaintiff fails to timely file an Amended Complaint, Defendants Perry, Jane Doe #1 and Cicala are directed to file an answer the original Complaint by December 8, 2025.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 28 and to mail a copy of this Opinion to the *pro se* Plaintiff at the address listed on ECF and to show proof of service on the docket.

Dated:  September 29, 2025
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[1] The Court notes that Defendant Wolf has yet to be served with service of process.